UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RHONDA WOODSON | * | |
| | * | |
| Plaintiff, | * | Civil Action No.: |
| | * | |
| VERSUS | * | District Judge: |
| | * | |
| WAFFLE HOUSE, INC. | * | Magistrate Judge: |
| | * | |
| Defendant. | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

## NOTICE OF REMOVAL

Defendant, Waffle House, Inc. (hereinafter "Waffle House"), through undersigned counsel and pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 hereby removes the matter entitled *Rhonda Woodson v. Waffle House, Inc.*, Docket No. 2021-08158, Division B, Section 5 pending in Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), to the United States District Court for the Eastern District of Louisiana, and respectfully represents that:

1. Rhonda Woodson ("Plaintiff" or "Ms. Woodson") commenced the captioned action by filing a Petition for Damages in CDC on October 21, 2021 (the "Petition").

   a. **Citizenship of Parties**

2. Plaintiff asserts in her Petition that she is a "person of the full age of majority and a resident of the State of Louisiana…"[1]

3. Plaintiff asserts that Waffle House "is a foreign corporation authorized to do and doing business in the State of Louisiana…"[2] In fact, Waffle House is a foreign corporation,

---

[1] Plaintiff's Petition, attached hereto as Exhibit "A", at the introductory ¶. Waffle House will file the entire state court record into the record hereto pursuant to 28 U.S.C. § 1447(b), as stated in the attached Listing.

incorporated under the laws of Georgia, and having its principal place of business located in Norcross, Georgia.[3]

### b. Injury/Damages Allegations

4. Plaintiff's Petition asserts that Ms. Woodson was a patron at the Waffle House restaurant located at 2500 Canal Street, New Orleans, LA 70119. While there, she approached the counter in order to give instructions to prepare her food order. When she turned around to walk back to her seat, Ms. Woodson alleges she slipped on a slippery substance on the floor, falling on her face and body, sustaining knee abrasions.[4]

5. Plaintiff's Petition further asserts that Ms. Woodson "sustained injuries to her neck, head, low back, knees, body and mind, together with past mental anguish and physical suffering; past and future loss of enjoyment of life; past and future expenses for medical care; all of which entitles Plaintiff, Rhonda Woodson, to recover from Defendants the damages as are reasonable in the premises."[5]

6. Waffle House denies liability for the damages sought by Plaintiffs and does not concede based upon the information contained in the record and received to date, that Waffle House is liable to Plaintiff for her claimed damages.[6] Waffle House nevertheless respectfully submits that, upon recent receipt of Plaintiff's medical records, the amount in controversy will exceed $75,000, exclusive of interests and costs.[7]

---

[2] Exhibit A at pp. 1, ¶ I.
[3] See report from Louisiana Secretary of State website attached hereto as Exhibit "B."
[4] Exhibit A at pp. 1-2, ¶¶ III – V.
[5] Exhibit A at pp. 2, ¶ VII.
[6] Waffle House submits that any potential challenges with respect to these issues are not relevant for purposes of establishing the amount in controversy for federal diversity jurisdiction purposes.
[7] Excerpt of Plaintiff's redacted medical records, attached hereto in part as Exhibit "C (*in globo*)", indicate the (1) discussion of a cervical spine surgery for possible future treatment should conservative treatment fail, (2) a possible biceps tear/rupture diagnosis, (3) a possible back surgery recommendation, and (4) an indication that a right knee arthroscope was scheduled to take place.

      **c.    Service and Timeliness**

7.    Waffle House was served with the Petition on November 23, 2021.[8]

8.    Waffle House has not appeared and answered in this matter due to securing an informal extension until Friday, January 14, 2022, to file responsive pleadings.

9.    While more than 30 days have passed since Waffle House received service of the Petition, this Notice of Removal is nevertheless timely pursuant to 28 U.S.C. § 1446(b)(3). Plaintiff's Petition was initially not removable on its face due to Plaintiff's vague and ambiguous assertion of damages in her Petition.[9] Section 1446(b)(3), however, provides for removal of such matters "within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."[10] Waffle House received the first set of Plaintiff's medical records on Friday, December 3, 2021, wherein those records provided for the (1) discussion of a cervical spine surgery for possible future treatment should conservative treatment fail, (2) a possible biceps tear/rupture diagnosis, (3) a possible back surgery recommendation, and (4) an indication that a right knee arthroscopy was scheduled to take place.[11] On Monday, December 13, 2021, Waffle House received the second set of Plaintiff's medical records, which involved plaintiff's chiropractic treatment received following the subject incident.[12] As this removal is being filed less than 30 days from Waffle House's receipt of Plaintiff's medical records, removal is being made timely pursuant to 28 U.S.C. § 1446(b)(3).

---

[8] See Citation of Service attached hereto as Exhibit D.
[9] Exhibit A, pp. 2, ¶ VII.
[10] 28 U.S.C. § 1446(b)(3).
[11] See Email Correspondence between undersigned counsel and opposing counsel with Plaintiff's first set of medical records dated December 3, 2021 attached hereto as Exhibit "E"; *see also* Exhibit C (*in globo*).
[12] See Email Correspondence between undersigned counsel and opposing counsel with Plaintiff's second set of medical records dated December 13, 2021 attached hereto as Exhibit "F"; *see also* Exhibit C (*in globo*).

## DIVERSITY JURISDICTION PURSUANT TO 28 U.S.C. §1332

10. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because this is a civil action between citizens of different states which involves an amount in controversy exceeding $75,000. Therefore, this matter is removable pursuant to 28 U.S.C. § 1441(a).

   a. **Diversity of Citizenship**

11. There is complete diversity of citizenship between Plaintiff, on the one hand, and Waffle House on the other. Plaintiff is a Louisiana domiciliary and citizen per the assertions in her Petition. Waffle House is incorporated under the laws of Georgia and having its principal place of business in Norcross, Georgia. Thus, Waffle House is diverse from Plaintiff.[13]

   b. **Amount in Controversy**

12. As noted above, Plaintiff's initial pleading, the Petition, did not "affirmatively reveal on its face" that Plaintiff was seeking more than $75,000 in damages.[14]

13. Thereafter, Waffle House first received on December 3, 2021, a set of Plaintiff's medical records, wherein those records provided for the (1) discussion of a cervical spine surgery for possible future treatment should conservative treatment fail, (2) a possible biceps tear/rupture diagnosis, (3) a possible back surgery recommendation, and (4) an indication that a right knee arthroscopy was scheduled to take place.[15] In light of this new information, Waffle House respectfully invokes the "other paper" rule set forth in 28 U.S.C. § 1446(b)(3) and cited above.[16]

---

[13] Corporate defendants are considered citizens of their states of incorporation as well as their principal place of business. See, for example, *Carden v. Arkoma Associates*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990); *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008); *IITWI, LLC v. Ward*, 2011 WL 3703484 (M.D. La. 2011).

[14] *Bosky v. Kroger Texas LP*, 288 F.3d 208, 210 (5th Cir. 2002) ("for purposes of the first paragraph of § 1446(b), the thirty day time period in which a defendant must remove a case starts to run from the defendant's receipt of the initial pleading only when that pleading affirmatively reveals on its fact that the plaintiff is seeking damages in excess of the minimum jurisdictional amount of the federal court"); quoting *Chapman v. Powermatic, Inc.*, 969 F.2d 160 (5th Cir. 1992).

[15] *Russell v. Bonilla Escobar*, No. CFV 18-660-BAJ-EWD, 2019 WL 2558258, at *5 (M.D. La. June 3, 2019), report and recommendation adopted, No. 18-CV-00660-BAJ-EWD, 2019 WL 2550315 (M.D. La. June 20, 2019),

14. Plaintiff's medical records, including the discussion of a cervical spine surgery, a possible biceps tear/rupture, a possible back surgery recommendation, and an indication that a right knee arthroscopy was scheduled, as well as the ongoing nature of treatment, establish that the amount of Ms. Woodson's damages are substantially certain to exceed $75,000.[17]

15. In this case, Plaintiff claims she sustained injuries to her neck, head, low back, knees, body and mind as a result of this incident. As it relates to her cervical injury, although plaintiff has had prior issues with her neck, it appears from her records that she may have aggravated her neck condition as a result of this incident. During one of her visits at Tulane Medical Center on January 26, 2021, plaintiff underwent an MRI of her neck, which revealed cervical radiculopathy at C5-6. Prior to the MRI, plaintiff had been complaining of ongoing neck pain for four months, and it was determined that conservative treatment had failed. Epidural and nerve root injections were considered. Additionally, a cervical spine surgery was discussed for possible future treatment if Plaintiff's symptoms were determined to be unresponsive.[18] Ms. Woodson's cervical injury, alone, establish that her damages are substantially certain to exceed $75,000. (See, for example, *Casey v. New Garden District Café, Inc.*, 2017-04316 (Civil District Court 09/23/21), plaintiff was awarded $150,000 in general damages after suffering a cervical injury with

---

where the Court found that since the amount in controversy was not facially apparent from the Petition since plaintiff generally alleged his injuries, defendant had the burden to prove the amount in controversy. The Court held that the defendant met its burden by introducing plaintiff's medical records, which demonstrated that plaintiff received chiropractic treatment, treatment from a neurosurgeon, MRIs, steroid injections, a branch block, and pain medication for three bulging discs, two herniated discs, and annular tearing. The Court also noted that plaintiff had been recommended for cervical surgery with an estimated cost of over $88,000 and incurred over $18,000 in medical expenses. The Court lastly pointed out that the defendant references the same injuries that plaintiff claimed he suffered from in his petition.

[16] *Addo v. Globe Life and Acc. Ins. Co.*, 230 F.3d 759, 760 (5th Cir. 2000) (citing 28 U.S.C. § 1446(b), "If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant…of a copy of an amended pleading, motion order, or other paper from which it may first be ascertained that the case is one which is or has become removable."…"Other paper" has been determined to mean 'the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction.'"

[17] Exhibit C (*in globo*).
[18] Exhibit C (*in globo*).

aggravation of pre-existing congenital and degenerative changes. Plaintiff's initial surgical recommendation was withdrawn after "symptoms largely resolved" and Plaintiff's subsequent surgical recommendation of second physician was not accepted by the Court).[19]

16. Regarding her shoulder, Plaintiff immediately complained of pain to her right shoulder following the incident while at Tulane Medical Center. She continued to complain of pain to her right shoulder throughout her treatment with Dr. Walter Ellis at Causeway Interventional Medicine, Dr. DeFranciesch at Interventional Spine Specialist, and Crescent City Chiropractic Center. More importantly, it was noted in her records with Dr. Walter Ellis that Plaintiff is treating with Dr. Leslie Sisco-Wise for her shoulder and that Dr. Wise is of the impression that Plaintiff may have suffered a biceps tear or rupture and recommends future treatment for her shoulder.[20] Treatment for a biceps tear/rupture will also become costly and will support a finding that Plaintiff's damages will exceed the amount in controversy of $75,000. (See, for instance, *Saucier v. State Farm Mut. Auto. Ins. Co.*, 14-3157 (USDC-WDLA 04/06/17), plaintiff was awarded $75,000 after suffering a right shoulder torn labrum, torn rotator cuff, and torn biceps tendon. Plaintiff underwent surgery after 3 years of conservative care failed to resolve complaints).

17. Lastly, as it relates to her treatment for her back injury and right knee injury, it is unclear from the record whether her surgery recommendations for both body parts (i.e. surgery for her low back condition recommended by Dr. Matthew Cyriac and scheduling of right knee arthroscopy) are related to the instant incident at Waffle House.[21] However, her records do establish

---

[19] *See also*, for example, *Luwisch v. American Marine Corporation*, 2:17-cv-03241 (USDC-EDLA 05/16/19), plaintiff awarded $90,000 in general damages for an aggravation of pre-existing asymptomatic cervical herniation at C6-7 and degenerative changes at C5-6. Plaintiff underwent ESIs. No surgery was recommended at time of trial; *see also Almond v. Freeman*, 624,403 (19th JDC 04/13/16), award of $83,000 in general damages after plaintiff suffered cervical pain that was treated with ESIs. Plaintiff experienced a second injury involving a concussion with loss of consciousness.
[20] Exhibit C (*in globo*).
[21] Regarding her back, Plaintiff was in treatment for her back before our incident and was previously scheduled to undergo a lumbar fusion. Thus, Dr. Cyriac's recommendation may be related to her previous treatment. Moreover,

ongoing treatment for her back, which will support the amount in controversy threshold. In particular, Plaintiff sought chiropractic treatment at Crescent City Chiropractic Center for her low back and neck pain following this incident. She also sought pain management with Dr. Walter Ellis at Causeway Interventional Medicine, LLC for neck pain, low back pain, and bilateral knees, and later sought treatment with Dr. DeFranciesch at Interventional Spine Specialist for neck pain, low back pain, and right shoulder pain.[22] (See, for example, *Miles v. Cummings*, 673,289 c/w 676,834 (19th JDC 09/24/20), plaintiff was awarded $90,000 following a lumbar injury reflected on the MRI at L4-5 and L5-S1. Plaintiff received conservative care with the chiropractor followed by ESI's 7 months post injury with resolution of plaintiff's complaints; *see also Walker v. Koenig*, 759,199 (24th JDC 06/28/19), where plaintiff was awarded $90,000 in general damages for aggravation of pre-existing degenerative lumbar disc. The court found that a 2-level fusion was not attributable to the accident).[23]

18. Despite the fact that this amount is already apparent based on the injuries, treatment, and recommendations for future treatment discussed *supra,* should plaintiff's right knee arthroscopy become related to our incident, this is an additional injury that will establish that Ms. Woodson's damages are substantially certain to exceed the amount in controversy of $75,000. (See, for instance, *Nunney v. City of Kenner*, 08-1298 (La. App. 5 Cir. 05/12/09), 17 So.3d 411, plaintiff awarded $80,000 in general damages for a lateral meniscus tear and flap tear of the left knee and aggravation of the two pre-existing knee injuries. Arthroscopic surgery was performed to repair new and pre-existing injuries).

---

Plaintiff previously fell six months before our incident and popped her right knee. She was supposed to have surgery as a result of that fall, but it was never performed due to the pandemic. Thus, it is unclear whether her right knee arthroscopy procedure is related to this incident.

[22] Exhibit C (*in globo*).

[23] *See also Riddle v. State Farm Mut. Auto. Ins. Co.*, 650 456 (19th JDC 07/30/18), plaintiff awarded $80,000 in general damages after suffering a lumbar disc bulging facet arthroplasty at multiple levels. Plaintiff treated with pain medications and ESIs. Plaintiff was recommended medial branch block, but they did not perform due to underlying health conditions.

19. Considering the foregoing and attached medical records and the numerous conditions and body parts Plaintiff alleges to have injured or aggravated, and which may be causally related to the subject incident, and the cumulative effects of said injuries and conditions, it has become readily apparent that the amount in controversy exceeds $75,000, and Waffle House has, therefore, satisfied its burden in this regard.

20. Diversity jurisdiction is fixed at the time of removal. *See Nolan v. Boeing Co.*, 919 F.2d 1058, 1063 n.5 (5th Cir. 1990).

## REMOVAL PROCEDURE

12. A copy of this Notice of Removal is being served upon Plaintiff through her counsel of record. A copy of the Notice to the Clerk of Court for Civil District Court for Orleans Parish, State of Louisiana, which will be filed in that Court, is attached hereto.

13. A copy of the state court pleadings, identified in the Listing Pursuant to 28 U.S.C. § 1447(b), will be filed accordingly.

**WHEREFORE**, Defendant, Waffle House, Inc. hereby provides notice that this action is duly removed.

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted,

*/s/ Megan A. Haynes*
_____
Donald E. McKay, Jr., La. Bar No. 14207
Tasha W. Hebert, La. Bar No. 25703
Megan A. Haynes, La. Bar No. 37158
**LEAKE & ANDERSSON LLP**
1100 Poydras Street, Suite 1700
New Orleans, LA  70163
Tel. (504) 585-7500
Fax. (504) 585-7775
Emails:   dmckay@leakeandersson.com
              thebert@leakeandersson.com
              mhaynes@leadeandersson.com

*Attorneys for Defendant Waffle House, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading has been delivered to all counsel of record on December 30, 2021, by ECF filing, by hand delivery, by telephone facsimile transmission, or by depositing a copy of same in the United States Mail, first class postage prepaid, at their last known addresses of record.

*/s/ Megan A. Haynes*
_____
Megan A. Haynes